**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAZA T. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 23 C 2403 |
| | ) |
| | )   Magistrate Judge M. David Weisman |
| MARTIN O'MALLEY, Commissioner of | ) |
| Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Raza T. appeals the Acting Commissioner's decision denying her application for a period of disability and disability insurance benefits. For the reasons set forth below, plaintiff's motion for summary judgment [8] is denied, defendant's motion for summary judgment [12] is granted, and the decision of the ALJ is affirmed.

**Background**

On September 26, 2020, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 1, 2018. The claim was denied initially on June 25, 2021, and upon reconsideration on October 19, 2021. Thereafter, plaintiff filed a written request for hearing. On August 11, 2022, an administrative law judge ("ALJ") held a telephone hearing. Plaintiff was represented by an attorney and Julie Bose, an impartial vocational expert also appeared at the hearing. The ALJ concluded that plaintiff had not been under a disability within the meaning of the Social Security Act from October 1. 2018 through August 26, 2022, the date of the decision. (R. 23-24.) Plaintiff then filed the instant complaint, seeking review of the ALJ's decision.

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.,* "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*,

---

[1] Martin J. O'Malley has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

139 S. Ct. 1148, 1154 (2019). "The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence." *Kimberly R.A. v. Comm'r of Soc. Sec.*, 421CV04153SLDJEH, 2022 WL 18599551, at *1 (C.D. Ill. Nov. 28, 2022), *report and recommendation adopted sub nom. Kimberly R. A. v. Kijakazi*, 421CV04153SLDJEH, 2023 WL 420684 (C.D. Ill. Jan. 26, 2023).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform ("RFC") her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

### Physical and Mental Impairments

Plaintiff contends that the ALJ erred on several grounds. First, plaintiff asserts that the ALJ erred in concluding that her degenerative disc disease and rotator cuff tendinitis are not severe impairments and did not articulate the reasons for his finding of non-severity. In determining that the degenerative disc disease and rotator cuff tendinitis were non-severe, the ALJ stated:

> The claimant testified to neck pain and shoulder pain that extends down to her hands. In January 2019, magnetic resonance imaging (MRI) of the cervical spine showed annular disk bulge and disc protrusions indenting the thecal sac with only mild lateral recess narrowing (2F/3). MRI of the right shoulder showed mild rotator cuff tendonitis and/or bursitis involving the distal supraspinatus (2F/5). Earlier MRI of the left shoulder showed mild tendinosis and no significant degenerative changes (5F/23). She was reportedly prescribed Gabapentin in April 2022, for the hands, arms, and shoulder, but absent are any electromyogram or nerve conduction studies, or etiology for her reported symptoms including those in her feet (e.g., 17E; 13F/14-15, 90). Further, physical examination findings reflect normal range of motion throughout, including in the neck and upper extremities, full 5/5 motor strength, and normal sensation (e.g., 10F; 13F/14, 90).

> The aforementioned impairments and any other impairments alleged by the claimant or mentioned in the medical records are not severe under the Act and Regulations because they have no more than a minimal effect on the claimant's ability to perform basic work

> activities or they have not persisted for a continuous period of at
> least 12 months.

(R. 26.)  Contrary to plaintiff's contention that "years of documented and objective findings relating to [her] musculoskeletal symptoms were simply brushed away in the ALJ's decision," (Pl.'s Reply. Dkt. # 14, at 3), the ALJ noted plaintiff's testimony regarding pain and discussed plaintiff's diagnostic findings.  A non-severe impairment is defined as "[a]n impairment or combination of impairments" that does "not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.922(a).  While plaintiff points to medical records relating to two doctors' visits in which she complained of shoulder, neck, and elbow pain as well as tingling and numbness in her hands, legs, and feet for which she was prescribed gabapentin, (Pl.'s Reply. Dkt. # 14, at 3), she fails to establish that this pain limited her ability to perform basic work activities.[2]  20 C.F.R. § 416.922(a).  Moreover, even assuming the degenerative disc disease and rotator cuff tendinitis were severe impairments and met the criteria of Listing 1.18 at Step Three[3], that same finding does not address the impact of the impairment on plaintiff's RFC.  Plaintiff has not provided any basis for this Court to conclude that the RFC determined by the ALJ would have been impacted by a finding of severity on the disc disease and rotator cuff tendinitis.  Plaintiff's failure in this regard renders harmless any error the ALJ may have made.  *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (stating that plaintiff's failure to hypothesize work restrictions necessary to address his alleged CPP limitations rendered harmless any error the ALJ may have made in the RFC).

Plaintiff next asserts that the ALJ's analysis of plaintiff's mental impairments was perfunctory and inadequate.[4]  In assessing her mental limitations, the ALJ stated as follows:

> The severity of the claimant's mental impairments, considered
> singly and in combination, do not meet or medically equal the

---

[2]  Plaintiff conclusorily states in her opening brief that pain in her neck, shoulders, and arms and findings of rotator cuff impingement, tendinosis and bursitis, and disc bulges and protrusions "each . . . has more than a minimal restriction on [her] ability to engage in basic work activities," (Pl.'s Mot. Summ. J., Dkt. # 8, at 12-13), but points to no record evidence in support.

[3]  The burden is on plaintiff to establish that her impairments meet or equal an impairment in the listings.  *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).  Plaintiff makes no attempt to demonstrate that the severity of her impairments with respect to her disc disease and rotator cuff tendinitis meet the criteria of Listing 1.18.  *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of disability benefits and supplemental social security income under step three.").

[4]  When assessing the severity of a mental impairment in step two, and ascertaining whether it meets or equals a listed disorder in step three, one permissible technique requires an ALJ to determine the claimant's degree of limitation in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *See* 20 C.F.R. 416.920a(c).  The ALJ must rate the extent to which a mental impairment interferes with the claimant's ability to function in these areas "independently, appropriately, effectively, and on a sustained basis" using a five-point scale: none, mild, moderate, marked, and extreme.  *Id.*

criteria of listings 12.04, 12.06, and 12.15. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a mild limitation. Psychological consultative examiner Henry Fine, PsyD, endorsed some disorientation, immediate and recent memory deficit, and poor fund of information (9F). However, other mental status examination findings reflect intact recent and remote memory (10F/6). Even when the record reflects no clear evidence that the claimant was still taking psychotropic medications, mental status examination findings have reflected clear sensorium, logical thought process, lucid thoughts, no hallucination, orientation, and average intelligence (e.g., 6F/58). As such, I find no more than mild limitation in this area of mental functioning.

In interacting with others, the claimant has a moderate limitation. The claimant endorsed panic, losing her composure, fear, and trouble getting along with others. The record reflects anxious and depressed mood (e.g., 6F/58, 12F/5), and the claimant seemingly appeared more anxious on consultative examination (9F4, 5; 10F/3). Notwithstanding, she is noted as cooperative, pleasant, and as providing good conversation when at ease (6F/9, 11; 10F/3; 12F/5). She also endorsed improved depression particularly when using psychotropic medication (e.g., 6F/8; 13F/19, 24, 43, 51, 57, 72). Accordingly, I find no more than moderate limitations in this area of mental functioning, and demonstration of useful ability to relate to others.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant testified to difficulty concentrating[] and indicated that she would not be able to function without taking naps. However, on psychological consultative examination while she was unable to multiply 4x9, she was able to perform the serial sevens calculation task from 100 (9F/5). She reported improved sleep when using psychotropic medication (e.g., 13F/19, 24, 43, 51, 57, 72), and she is routinely noted as alert, attentive, and oriented (see generally 11F, 12F, 13F). As such, I find no more than moderate limitations in this area of

4

mental functioning and demonstration of useful ability to focus attention[] and stay on task at a sustained rate.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The record reflects problems with mood and some difficulty with managing her emotions, but no problem with personal hygiene, and she the claimant is noted to have intact insight and judgment (e.g., 6F/58, see generally 11F, 12F, 13F). In addition, the record reflects only intermittent use of psychotropic medications, no consistent psychotherapy, and no psychiatric hospitalization or engagement in an intensive outpatient program. As such, I find that that claimant is no more than moderately limited in this area of mental functioning. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(R. 26-27.)

Plaintiff asserts the ALJ erred in assessing every area of the paragraph B criteria. Plaintiff contends, for example, that the ALJ cherry-picked evidence and disregarded evidence contrary to his conclusions. For example, in the ALJ's assessment of plaintiff's ability to understand, remember, or apply information, plaintiff faults the ALJ for crediting the findings of an internal medicine consultative examiner over an evaluation by a psychiatrist, Dr. Fine. But the ALJ simply noted the different conclusions in the examiners' evaluations and stated that even when it was not clear that plaintiff was taking psychotropic medications, "mental status examination findings have reflected clear sensorium, logical thought process, lucid thoughts, no hallucination, orientation, and average intelligence."[5] (R. 27) Plaintiff's argument "essentially asks [the Court] to reweigh the evidence and substitute [its] judgment for the Commissioner's," but that is not [the Court's] role." *Fitschen v. Kijakazi*, No. 20-3508, 2023 WL 7522241, at *7 (7th Cir. Nov. 14, 2023).

Similarly, in faulting the ALJ's conclusion that plaintiff demonstrated only moderate limitations in interacting with others, plaintiff again asserts that the ALJ cherry-picked evidence, and did not "meaningfully confront contrary evidence in the record that, even in the workplace, on job interviews, and with friends and family, Plaintiff is anxious and combative." (Pl.'s Mot. Summ. J., Dkt. # 14, at 5.) This is inaccurate. The ALJ expressly noted that "[i]n interacting with others, [plaintiff] has a moderate limitation" and "endorsed panic, losing her composure, fear, and trouble getting along with others." (R. 27) (citations omitted). The ALJ concluded that "[n]otwithstanding, [plaintiff] is noted as cooperative, pleasant, and as providing good conversation when at ease" and "also endorsed improved depression particularly when using psychotropic medication." *Id*. As already noted, the Court cannot reweigh the evidence.

---

[5] Plaintiff's contention that the ALJ's citation to Exhibit 6F/58 as not containing a mental status examination is technically correct. Nevertheless, while page 58 of Exhibit 6 does not contain the mental status examination results mentioned by the ALJ, page 55 does; thus, it appears simply to have been a citation error.

Plaintiff's arguments with respect to the ALJ's determinations regarding plaintiff's moderate limitations in concentrating, persisting, or maintaining pace and in adapting or managing herself are similarly unavailing. While plaintiff contends that Dr. Fine's testing "found quite the opposite" of moderate limitations in concentrating, persisting, and maintaining pace, (Pl.'s Mot. Summ. J., Dkt. # 15, at 5), the citations plaintiff refers to, pages of 823-24 of the administrative record, do not specifically address nor contradict the ALJ's findings regarding plaintiff's limitations in concentrating, persisting, or maintaining pace. As for the moderate limitations in plaintiff's adapting or managing herself, plaintiff points to one personal health questionnaire in which plaintiff self-reported that her symptoms of depression made it very difficult for her to work, take care of things at home, or get along with other people, (R. 749-50), and anxiety screenings placing her functional impairments on those particular days as "very" and "extremely difficult." (R. 772-73, 794.) The ALJ remarked that in April 2019, plaintiff requested low dose medication "as she was stressed at work," among other things, and that when taking psychotropic medication, plaintiff reported improved sleep and concentration and improvements in her depressive symptoms. (R. 30.) After considering all plaintiff's treatment records, (Def.'s Mem. Supp. Mot. Summ. J., Dkt. # 13, at 6), however, the ALJ stated that "[t]he record reflects problems with mood and some difficulty with managing her emotions, but no problem with personal hygiene, and [plaintiff] is noted to have intact insight and judgment," and that "the record reflects only intermittent use of psychotropic medications, no consistent psychotherapy, and no psychiatric hospitalization or engagement in an intensive outpatient program." (R. 27.)

It is not the Court's role to "supplant the ALJ's findings with the Court's own assessment of the evidence." *Kimberly R.A.,* 421CV04153SLDJEH, 2022 WL 18599551, at *1. The Court finds the ALJ's conclusions regarding plaintiff's paragraph B limitations to be supported by substantial evidence. Nor is plaintiff's conclusory assertion that her mental impairments satisfied paragraph C criteria of the mental listings availing, as she provides no record citations or argument in support. See *Tutwiler v. Kijakazi,* 22-2808, 2023 WL 8461648, at *4 (7th Cir. Dec. 7, 2023) ("The lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal.").

### Residual Functional Capacity

With respect to plaintiff's RFC, the ALJ stated as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: moderate noise; occasional exposure to fumes, odors, dusts, gases, poor ventilation; can carry out simple tasks, with simple work-related decisions and judgment, performing these tasks with adequate pace, persistence and concentration in two hour segments allowing for normal breaks; no interaction with the general public as part of the job duties; and can tolerate the stress and changes in a routine work setting consistent with simple work.

(R. 28.)

The entirety of plaintiff's discussion regarding her RFC consists of sequential quotations containing purportedly relevant law, and a conclusion paragraph stating that "as described above, [p]laintiff has numerous physical ailments that impact her exertion, particularly as noted in the Athletico Physical Therapy records [with no citation to the administrative record]," and the "ALJ erred by ignoring those findings when determining [p]laintiff had no exertional limitations . . . ." (Pl.'s Mot. Summ. J. Dkt. # 8, at 17). "[I]t is [plaintiff's] burden to produce evidence showing how her impairments affect her ability to work," *Hansford v. Saul*, No. 18-CV-607-SLC, 2019 WL 4727771, at *4 (W.D. Wis. Sept. 27, 2019), but plaintiff does not explain how the physical therapy records require imposing any restrictions on plaintiff's ability to work. Moreover, the ALJ found persuasive the conclusions of the state agency physicians, Drs. Reddy and Western, (R. 31, 89-91, 104-05), that plaintiff did not have any exertional limitations, which plaintiff does not challenge. Even assuming evidence before the ALJ suggested exertional restrictions, plaintiff does not explain what additional RFC limitations were required to address them, and her failure to do so renders harmless any error the ALJ may have made. *Jozefyk*, 923 F.3d at 498 (stating that plaintiff's failure to hypothesize work restrictions necessary to address his alleged CPP limitations rendered harmless any error the ALJ may have made in the RFC). Accordingly, the Court denies this basis for relief.

Plaintiff next asserts that the ALJ erred in concluding that plaintiff could perform her past relevant work as a janitor. In so concluding, the ALJ adopted the testimony of the vocational expert, Julie Bose, who testified that an individual of plaintiff's age, education, past work, and RFC could perform plaintiff's past relevant work as a janitor. (R. 31-32, 68.) Plaintiff notes that she testified regarding her exertional limitations, which included constant headaches that cause nausea, dizziness, and vomiting, pain in her neck and shoulders that radiates into her arms, hand tremors and difficulty holding things, and foot and ankle swelling that limit her ability to stand, sit, and walk. (R. 58-60, 63-63.) The ALJ acknowledged plaintiff's testimony in this regard and stated that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 29.) The ALJ then discussed plaintiff's testimony and found her purported physical impairments were "not as limiting as alleged," noting that while plaintiff testified to constant headaches and dizziness, parts of the record reflected plaintiff's denial of headaches, dizziness, and vomiting, no treatment by a headache specialist or use of preventative medication, no chest pain, ear ringing, hand tremors or shaking, and no swelling or edema in her feet. (R. 30) (citations omitted). The Court finds no error with the ALJ's conclusion in this regard. *See Tutwiler*, 2023 WL 8461648, at *3 (concluding that the ALJ's credibility determination was not "patently wrong," for several reasons, including that "the ALJ reasoned that the intensity, persistence, and limiting effects of the symptoms that [the plaintiff] described in her testimony did not parallel her medical records, which showed that her symptoms were sometimes debilitating but other times were not"); *McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011) (ALJ's credibility determination not patently wrong if there exists one valid reason for discounting).

Plaintiff further faults the ALJ for not accepting the vocational expert's testimony, in response to questions asked by the ALJ, about plaintiff's ability to work if other possible limitations were imposed, including among others, working off task, absenteeism, naps, limitations

in sitting and standing, and handling issues.  But the ALJ expressly rejected the vocational expert's testimony in response to those additional questions "because the limitations added beyond the [stated] residual functional capacity assessment are not found to be supported by the record."  (R. 33.)

For these reasons, plaintiff's motion for summary judgment [8] is denied, defendant's motion for summary judgment [12] is granted, and the decision of the ALJ is affirmed.

**Date**:  February 6, 2024

**M. David Weisman**
**United States Magistrate Judge**